## Clifford R. Peet, et al., Plaintiffs-Appellees, v. Village of Northfield, a Municipal Corporation, Defendant-Appellant.

### Gen. No. 49,360.

First District, First Division.
April 6, 1964.
Rehearing denied April 27, 1964.

Greggar P. Sletteland, Byron S. Matthews, and Thomas A. Matthews, all of Chicago, for appellant.

Henry W. Kenoe, Raphael Fine, and Maurice J. Nathanson, all of Chicago (Allen Hartman, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

The Village appeals from a summary judgment order directing the Recorder of Deeds of Cook County to record a plat of subdivision as finally submitted by the plaintiffs even though not approved by the corporate authorities. A summary judgment of this nature is provided for by ch 24, sec 11–12–8, Illinois Revised Statutes 1961. It is therein provided that:

"The plan Commission shall approve or disapprove the application for preliminary approval within 90 days from the date of the application or the filing by the applicant of the last item of required supporting data, whichever is later, unless such time is extended by mutual consent. If such plan is disapproved, then within said 90 days the plan Commission shall furnish to applicant, in writing, a statement setting forth the reason for disapproval and specifying with particularity the aspects in which the proposed plat fails to conform to the ordinances including official map. If such plat is approved the corporate authority shall accept or reject said plat within 30 days after its next regular stated meeting following the action of the plan Commission. Preliminary approval shall not qualify a plat for recording.

". . . . If the proposed plat is disapproved, the order or resolution shall state the reasons for the disapproval, specifying with particularity the as-

pects in which the proposed plat fails to conform to the official map. A copy of the order or resolution shall be filed in the office of the municipal clerk.

"If the corporate authorities fail to act upon the final plat within the time prescribed the applicant may, after giving 5 days written notice to the corporate authorities, file a complaint for summary judgment in the Circuit Court and upon showing that the corporate authorities have failed to act within the time prescribed the Court shall enter an order authorizing the Recorder of Deeds to record the plat as finally submitted without the approval of the corporate authorities. . . ."

Plaintiffs alleged in their complaint that they did, in the middle of August 1961, submit to the plan Commission of the Village a proposed plat of subdivision, a copy of which they attached to the complaint as plaintiffs' Exhibit "A"; that the plan Commission considered said plat at its meeting of October 2, 1961; that it arbitrarily and contrary to the statute, and for reasons extraneous to, and outside the Village plan, contrary to the existing revised subdivision regulations as provided by ordinance, recommended a rejection and forwarded its recommendation to the Board of Trustees of the Village. Plaintiffs further charged that the plan Commission failed to furnish the applicant, in writing, a statement setting forth with particularity its reason for disapproval, and the aspects in which the proposed plat failed to conform to the Village ordinances and official map. The complaint further alleged that the Village Board of Trustees held a regular meeting on December 13, 1961, and purportedly acted upon the plat disapproving it, but the order or resolution stating the reasons for

322

its disapproval specifying with particularity the aspects in which the proposed plat failed to conform to the official map had not been filed in the office of the municipal clerk nor had the plaintiffs received a notice to that effect. Plaintiffs prayed for summary judgment.

The answer of the Village set forth that its Board of Trustees, on December 8, 1954, committed the Village to rezone plaintiffs' land as requested by them in reliance on plaintiffs' written commitment, dated December 3, 1954, not to subdivide the property into parcels smaller than 12,500 square feet and in reliance on plaintiffs' commitment to appropriately revise a subdivision plat proposed in 1954 in order to provide access to said lots by a roadway; that it rezoned the property and plaintiffs properly revised and submitted a plat which the plan Commission approved (Village Exhibit "A" attached to the answer); that from time to time thereafter, plaintiffs presented various proposed changes in the approved plat, none of which conformed to plaintiffs' original commitments or to the Village ordinances and all of said proposals were disapproved. In its answer the Village further contended that plaintiffs' plat, described as plaintiffs' Exhibit "A" to the complaint, was never submitted or considered by the plan Commission; that this plat was submitted to the Board of Trustees after the meeting of said Board on October 11, 1961. The tentative plat submitted to the plan Commission in August 1961 was attached to the answer as Village Exhibit "B." This plat was disapproved by the plan Commission and it's recommendation was forwarded to the Board. The answer further stated that the meeting minutes of the plan Commission dated October 2, 1961 were made available to the plaintiffs at the Board meeting on October 11, 1961 in accordance with the specific

323

written request of plaintiffs' attorneys. The minutes of said Board meeting contained the following:

"Mr. Peet and his attorney, Mr. Raphael Fine, then came before the Board to request changes in Lagoon Terrace subdivision plat approved in 1954 but never recorded. A report of the plan Commission dated October 2, 1961 was read to the Board which report disapproved the proposed changes. After discussion, Mr. Peet was requested to furnish a sketch drawn to scale so that an investigation of fire and police protection requirements could be completed. The matter then was taken under advisement."

Plaintiffs' Exhibit "A" was subsequently furnished pursuant to the request. The answer further alleged that plaintiffs' attorney was advised in writing on December 28, 1961 that the Board at its regular meeting of December 13, 1961 took the action set forth in the minutes of that meeting:

"President Boylston then brought up the question of the plan Commission's rejection of Mr. Peet's proposed subdivision. The minutes of the plan Commission meeting of October 2, 1961, insofar as said minutes pertained to Mr. Peet's subdivision, were then read. A discussion was had on the public safety problems the proposed street location would create and the Village attorney advised that the proposed subdivision did not meet the requirements of the subdivision regulations. Thereupon, it was moved by . . . and seconded by . . . that the action of the plan Commission in rejecting the proposed subdivision plat be approved. The motion was carried."

The answer of the Village then averred that the plats described as plaintiffs' Exhibit "A" and Village Ex-

hibit "B" show, on their face, that they fail to meet the requirements for a plat entitled to record under sec 11–12–8 (Ill Rev Stats 1961, c 24) and also that they fail to meet the requirements of the Village ordinances and plaintiffs' commitments to the Board.

Plaintiffs filed a reply admitting that the Village was committed to rezone the property on December 8, 1954 as requested by plaintiffs and that said commitment was made in reliance on plaintiffs' stated desire and written commitment dated December 3, 1954 not to subdivide into smaller parcels than 12,500 square feet, but denied that the Village acted upon reliance of an alleged commitment of plaintiffs to appropriately revise the subdivision plat proposed in 1954 in order to provide access to said lots by a roadway. Plaintiffs said they made no such commitment but on the contrary they, from time to time, discussed with the Commission a number of alternate plans to which objections were raised or which the parties agreed were not suitable for the purposes required.

Plaintiffs moved for summary judgment on the ground that the only question involved was whether the Village, in acting upon plaintiffs' application complied with the statute. Attached to said motion was the affidavit of plaintiff, Clifford R. Peet, to the effect that his letter of December 18, 1954 (a copy of which was attached) initiated his request for zoning approval of a subdivision; that a second letter (a copy of which was also thereto attached) guaranteed that in the event the above property was rezoned as alleged, the individual lots would contain a minimum of 12,500 square feet; that this was the only representation made as a consideration for rezoning of said property. Peet further stated that in July 1958 he, on behalf of the plaintiffs, presented a first tentative plat; that thereafter many discussions were had with respect to the feasibility of the location of a means

of ingress and egress to said lots and several tentative plats were considered; that in the middle of August 1961 plaintiffs submitted to the Commission a final proposed plat, as alleged in the complaint, and that the plat described in the answer, as Village Exhibit "B," was the last item of supporting data required by said plan Commission. The affidavit then reiterated plaintiffs' charges that the plan Commission disapproved their aplication for preliminary approval and failed to furnish to plaintiffs within 90 days a statement in writing setting forth the reasons for disapproval. Further, the affiant said that plaintiffs' Exhibit "A" was substantially the same as Village Exhibit "B" and was requested by the Board in said form for consideration by it of the Commission's recommendation; that the Board, on December 13, 1961, disapproved the application and failed to state the reasons therefor, or to specify with particularity the aspects in which said plat failed to conform to the official map.

To the said motion the Village filed objections. The Village charged that plaintiffs admitted they did not file plaintiffs' Exhibit "A" with the plan Commission and therefore sec 11–12–8 did not apply; that even if it did, the plat must comply with the Village subdivision regulations because the said plat shows on its face no frontage on a public street for Lots 2 and 3 as required by paragraphs 9 and 10 of sec 6 (Village Ordinances). The plat provided for a private street to accommodate Lots 2 and 3 and the Village charged that even if the private street were dedicated as a street of the required width it would necessarily create a double frontage between such street and Frontage Road, and such double frontage is prohibited by paragraph 10 of sec 6 (Village Ordinance).

The Village further objected because the plat attached to the complaint as plaintiffs' Exhibit "A" did

not comply with plaintiffs' admitted commitment, in that the area of Lot 5 thereof contained only 11,794.68 square feet instead of the agreed 12,500.

On September 4, 1962 the court entered summary judgment on the said record, and attached to its order was the plat to be recorded. The Village then passed a resolution on September 12, 1962 authorizing the recordation of a photostatic copy of the plat of subdivision entitled "Lagoon Terrace" which it had approved in 1956, the plaintiffs having the original in their possession, which they never recorded. The photostatic copy of the said plat was recorded September 13, 1962. Thereafter, on October 3, 1962, the Village filed its motion to vacate the summary judgment order, setting forth that the plat ordered by the court to be recorded was not the same as plaintiffs' Exhibit "A" because the surveyor's affidavit on the plat ordered to be recorded was dated August 23, 1962 and the two plats differed; that Lagoon Terrace plat, now recorded, indicated Lagoon Lane as a public street so dedicated in 1956 and ratified and confirmed by the recent recording; that the public rights in the said street cannot be abridged or destroyed without the approval of the Village Board according to statutes (Ill Rev Stats 1961, c 109, §§ 6 and 7; c 24, § 11–91–1); that if the ordered plat is recorded, plaintiffs' title to the land would be seriously clouded without affecting the rights of the public in Lagoon Lane. The Village suggested an agreement between the parties on a further plat of subdivision reconciling the plats of record or further litigation would be required to remove the cloud on the title.

Plaintiffs then filed their surveyor's affidavit wherein he stated that the plat attached to the court's summary order was prepared to conform to the preliminary plat prepared in his office on August 27, 1958

327

(attached to the complaint as plaintiffs' Exhibit "A"); that his office records indicate that plaintiffs have not furnished any copies of the 1958 preliminary plat since August 27, 1958; that the 1958 preliminary plat was not prepared as, or intended to be, a final plat of subdivision. To this the Village countered, with an affidavit by its president, that not until he read the surveyor's affidavit did he realize that the preliminary plat submitted to the Village in 1961 (plaintiffs' Exhibit "A") had been prepared in 1958 and therefore must have been submitted earlier to and rejected by the Village. He further says that the minutes of the plan Commission of September 8, 1958 read as follows:

> "Mr. C. R. Peet presented a plan (owner will present copy at meeting) to change the location of of the roadway on a previously approved subdivision from the east side to the west side. The property is still unimproved except for one house. This property lies approximately 200 feet east of Edens and extends from Winnetka Ave. south to the dead end of Frontage Road. It was rezoned single family F to single family C and platted before the Village subdivision ordinance was passed in April 1956. Without an ordinance a 25-foot roadway was allowed to keep the area of the lots over 12,500 square feet as covenanted by the owner.

> "To move the roadway to the west side of the property would constitute a resubdivision and under the present ordinance it would have to be at least 50 feet wide, reducing the lot sizes under the agreed area. It would also create a double frontage for property just west of this subdivision which is in violation of the ordinance.

"It was felt that to calm Mr. Peet's fears of having outsiders use the road for access to the Forest Preserve, lying just east of his property, the Village should post 'No Parking' signs on the road and police the area against this violation inasmuch as the adjoining Forest Preserve was in the Village limits.

"Upon motion duly made and seconded, it was unanimously voted to reject Mr. Peet's proposed change of roadway location."

The affidavit of the president of the Village further contained the Board meeting minutes of September 10, 1958, showing the following:

"Mr. Boylston then read the plan Commission's report which recommended denial of Mr. C. R. Peet's request to change the location of the roadway in his subdivision just east of Eden's Highway and on the south side of Winnetka Ave. On motion of Trustee ———, seconded by Trustee ——— it was unanimously voted to approve the recommendation of the plan Commission";

that the plan Commission disapproved "substantially the same tentative plat" on October 2, 1961 and thereupon by letter of October 3, 1961, plaintiffs' attorney made the following request of the Board president:

"This office represents Clifford Peet who last night presented a tentative plat of subdivision to the plan Commission for its approval. By vote of four to one the plan Commission rejected this tentative plat. Mr. Peet would like to have this decision reviewed by the Village Board at its next meeting which, I believe, will be on Wednesday evening, October 11. I would appreciate it if you

329

would inform me as to whether this matter can be placed on the agenda for that meeting."

and the following request to the plan Commission:

"I believe you will find the enclosed copy of my letter to the Village president self-explanatory. I would appreciate it very much if you would arrange to have the minutes of your meeting of October 2 available to the Village Board for its meeting of October 11. If this is not feasible, I would like to obtain a certified copy of your resolution of rejection."

On January 10, 1963 the court denied the motion of the Village to vacate.

We have detailed the entire record before the court in order to determine whether a summary judgment is justified under the statute invoked by the plaintiffs. From a review of the undisputed facts in the case we find that the court erred in its judgment. It is evident that the plaintiffs instituted their intent to subdivide in 1954 and in April of 1956 the Village accepted and approved their proffered plat of subdivision. Plaintiffs did not see fit to record said plat but from then on, through numerous appeals to the plan Commission and the Board, sought to make changes in the subdivision plat. It was clear that the main bone of contention was the roadway on the easterly side of the property adjoining the Forest Preserve. Plaintiff feared that his roadway would attract undesirables from the Forest Preserve and to substitute, in lieu thereof, some access to the lots from the west. Their tentative plat presented September 8, 1958 proposed a private street to accommodate Lots 2, 3 and 4. This the Village disapproved. Its reasons therefor were specifically and particularly indicated. The Municipal code of 1961 was not in effect

then. After the effective date of the code, plaintiffs applied for approval of the same plat disapproved in September of 1958 and in their complaint before the court did not allege any of the proceedings before the municipal authorities prior to "the middle of August 1961." The Village, by its pleadings, brought into the record the prior occurrences. The parties are bound by all the circumstances effecting this property especially where the same matters were passed upon before. But assuming plaintiffs may properly disregard the occurrences prior to August 1961, by their own conduct they waived strict compliance with the statute. After the action of the plan Commission on October 2, 1961, their attorney requested the Board to pass upon the Commission's rejection at the Board meeting of October 11, 1961. They also notified the Commission on October 3, 1961 to arrange to have the minutes available for the Board and, if not feasible, then requested a certified copy of the resolution of rejection. This was within a substantial period prior to the expiration of the 90 days from the middle of August when plaintiffs filed their application. We may properly assume, but for plaintiffs' action, the Commission would more specifically and particularly have given reasons for its disapproval, in writing.

The Board, at plaintiffs' request, took up the matter promptly and indicated its action by resolution at the meeting of December 13, 1961 when it approved the action of the plan Commission. Plaintiffs do not contend that the resolution was not filed with the Municipal clerk as part of the minutes of the Board, but only that the resolution did not state the reasons for disapproval specifying with particularity the aspects, etc. By plaintiffs' actions it was clear that they were neither delayed in having action taken upon their application or applications nor were they in

doubt as to the reasons for acts of disapproval. They brought about the speedy actions thereon themselves and cannot now rely on strict technicalities to obtain summary relief. If their rights were denied, or if the municipal authorities acted arbitrarily, or capriciously, the proper relief is by other appropriate appeal to the courts. Summary judgment is a stringent proceeding and the party seeking it must clearly establish that he is entitled to it.

The judgment of the lower court is reversed.

Reversed.

MURPHY, P. J. and BURMAN, J., concur.